**Rolf K. WECKESSER, Plaintiff,**

v.

**Horst P. G. WESTERLING, et al., Defendants.**

**No. C–1–81–370.**

United States District Court, S. D. Ohio, W. D.

Sept. 22, 1981.

C. D. Mullenix, Cincinnati, Ohio, for plaintiff.

W. Joseph Dehner, Jr., Cincinnati, Ohio, for defendants.

### OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

SPIEGEL, District Judge:

This matter came on for hearing upon defendants' motion for summary judgment (doc. 5), the deposition of plaintiff and the exhibits attached thereto, affidavit of plaintiff (doc. 6), defendants' reply memorandum (doc. 7), and plaintiff's motion to dismiss defendants' motion for summary judgment, etc., and affidavits and exhibits attached thereto (doc. 10), and the oral arguments of counsel. For the reasons set forth below, it is the conclusion of the Court that defendants' motion for summary judgment should be denied at this time.

This is an action whereby plaintiff Rolf K. Weckesser has sued defendant Europam Corporation and Horst P. G. Westerling for stock fraud, under the 1934 Exchange Act and the rules thereunder, to-wit: Rule 10(b)(5). 15 U.S.C. §§ 78a *et seq.* There are pendent state claims asserted also in the complaint. The following is plaintiff's "federal count."

5. During the time period of September, October and/or November and/or December, 1979, Defendants alleged to Plaintiff that Plaintiff must sell securities held by Plaintiff in the above-referenced corpora-

tion back to and/or through or to the corporation and/or other stockholders. That during the above time reference, Defendants made in connection with the sale of securities owned by Plaintiff untrue, deceptive and misleading statements of material facts, omitted to state material facts, and used other devices, schemes and artifices to defraud Plaintiff in the sale of securities in the amount of $50,000.00. That Plaintiff relied on the expertise of the Defendants in such matter and was unaware of the fraudulent conduct of the Defendants.

6. That the Defendants, in order to carry forward their fraudulent schemes, artifices and devices, used Interstate Commerce to-wit: —Interstate International Telephone, the mails, telegraph, Telex Communication Systems and Interstate Commerce all to perpetrate their fraudulent activities upon the Plaintiff.

7. That at all times relevant, the Defendants represented to Plaintiff that his stock could not be sold for in excess of $120,000.00 when in fact the Defendants obtained total consideration of $170,000.00 for Plaintiff's stock. Defendants did not pay over the total consideration to Plaintiff.

The essence of plaintiff's claim is contained in paragraph 5 of the complaint: "Defendants made in connection with the sale of securities owned by plaintiff untrue, deceptive and misleading statements of material fact, omitted to state material facts, and used other devices, schemes and artifices to defraud Plaintiff in the sale of securities in the amount of $50,000.00. That Plaintiff relied on the expertise of the Defendants in such matters and was unaware of the fraudulent conduct of the Defendants." If fraudulent activities took place, there is no doubt that interstate methods of communication were utilized by the defendants.

The narrow question which we must decide is whether there is "no genuine as to any material fact and [whether] the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court cannot try issues of fact on a Rule 56 motion but is empowered to determine whether there are issues to be tried. 10 Wright & Miller, *Federal Practice & Procedure: Civil* § 2712 at 379 (1973). The moving party "has the burden of showing *conclusively* that there exists no genuine issue as to a material fact and the evidence, together with all inferences to be drawn therefrom, must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979). (Emphasis original.) And, while the movant's papers are to be closely scrutinized, those of the opponent are to be viewed indulgently. *Id.* at 63. "The District Court [is] obligated to consider not only the materials specifically offered in support of the motion, but also all 'pleadings, depositions, answers to interrogatories, and admissions' properly on file and thus properly before [the] Court." *Id.* quoting Fed.R.Civ.P. 56(c). Summary judgment "must be used only with extreme caution for it operates to deny a litigant his day in court." *Id.* at 63.

Defendants rely upon the deposition of plaintiff to support their contention that there is no genuine issue of material fact in this case, and that therefore judgment should be granted to them.

An examination of plaintiff's deposition, however, discloses facts that militate against the granting of judgment for the defendants. When plaintiff told defendant Westerling that he wanted to sell his stock, Westerling misrepresented to plaintiff the amount that plaintiff would be entitled to receive for his stock (Weckesser Depo., p. 84). On more than one occasion, plaintiff indicated to Westerling that he wanted to contact the other shareholders of Europam, but Westerling insisted that he would handle the matter for plaintiff (Weckesser Depo., p. 86). Westerling tried to conceal from plaintiff the fact that he was receiving $170,000 for plaintiff's stock, to be purchased by Mr. Ferrari's corporation (Weckesser Depo., p. 40). When plaintiff saw the Telex disclosing that the purchase price for the stock was $170,000, he feared that if he confronted Westerling he would lose his job

with Europam (Weckesser Depo., p. 91). On several occasions when plaintiff asked Westerling to return plaintiff's stock certificate to him, Westerling refused to do so (Weckesser Depo., p. 93, 94). When Mr. Ferrari found out in 1981 from plaintiff that Westerling got the $50,000 and plaintiff did not receive $170,000 for his stock, Mr. Ferrari was "furious" and exclaimed "what else is Horst Westerling liable to do" (Weckesser Depo., p. 115). Certainly, this testimony raises questions of fact concerning the propriety of the activity of the defendant Westerling and his associates in dealing with the plaintiff and whether this activity constitutes a violation of the Exchange Act.

Defendant contends that because the shareholder's agreement (Exhibit 11 to plaintiff deposition) sets a price to be paid for plaintiff's shares, he has no claim under the federal securities laws when he receives *the specified* amount. However, there are serious questions first as to whether the stock purchase agreement was binding on the parties in this transaction, secondly whether in fact the provisions of the stock purchase agreement were followed, and thirdly, whether the plaintiff received the "specified amount" provided for in the stock purchase agreement. Furthermore, at oral argument, defendants' counsel contended that .plaintiff was only entitled to receive for his stock 80% of the book value, citing Article 14(b), p. 15 of the Shareholders' Agreement. However, a reading of Article 14 indicates that it was only applicable in the event of plaintiff's ceasing to be an employee of the corporation, or upon plaintiff's death. "Rider 13" of the agreement, however, provides:

> Any sale by the selling shareholder to other buyers shall be at such price as the selling shareholder may obtain, but not less than 80% of the book value of such shares. . . .

It certainly can be argued that if plaintiff had negotiated directly with Mr. Ferrari, he would have been able to obtain $170,000 for his stock, which would be the best price that he, as the selling shareholder, could obtain, as authorized by Rider 13. There-

fore, there is at least a conflict in the interpretation of the Shareholders' Agreement.

There was also a question whether Weckesser was limited in the price he could get for his shares because Article 14(b) of the Agreement applies only when a sale is made to existing shareholders. There is evidence in the record that Weckesser's stock was purchased by Chemo Paper Consult Trust, which was not an existing shareholder (Affidavit of Rolf Weckesser, doc. 6). Weckesser, thus, may have been entitled to the market price for his shares under the Shareholders' Agreement.

Defendants contend that there is no fraud in this transaction because there was no reliance by the plaintiff on defendants' concealment of the fact that $170,000 was being paid for plaintiff's stock. The Court cannot conclude as a matter of law that the doctrine of reliance is dispositive in this kind of situation where there is clear evidence of an attempt to conceal on the part of Westerling, and where the plaintiff feared he would lose his job if he confronted Westerling. Rule 10(b)(5) has three sections and only one of them requires that plaintiff show reliance on an alleged misrepresentation. *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972). Rule 10(b)(5)(a) provides that it shall be unlawful for any person:

> To employ any device, scheme or artifice to defraud.

Similarly, Section (c) makes it unlawful for any person:

> To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

The Court, in *Ute*, found a violation of Rule 10(b)(5) without any showing of plaintiff's reliance where defendant's activities disclosed a "course of business" or a "device, scheme or artifice" that operated as a fraud upon the plaintiffs. *Id.*

The Sixth Circuit recently cited this language in *Ute* with approval. *Carothers v. Rice*, 633 F.2d 7 (6th Cir. 1980). The Sixth Circuit stated that a plaintiff bringing a suit under Section 10(b) and Rule 10(b)(5) does not have to prove he relied upon admissions of material fact. *Id.* at 14 citing *Affiliated Ute Citizens*, 406 U.S. at 152–54, 92 S.Ct. at 1471–72. All that is necessary is that plaintiff prove scienter. *Id.* Similarly, the Fifth Circuit found that reliance is not necessary where a scheme of fraud is asserted. *Shores v. Sklar*, 647 F.2d 462 (5th Cir. 1981).

Plaintiff has alleged defendants employed fraud and fraudulent schemes in the sale of his stock. The fact that plaintiff had some information regarding the true purchase price of the stock does not negate the fraud perpetrated on the plaintiff by the defendants. Neither does the fact that plaintiff received the amount he asked for because defendant Westerling represented to plaintiff a number of times that that was all he was entitled to receive under the Shareholders' Agreement. The purpose of the securities law and accompanying regulations is "to substitute a philosophy of full disclosure for the philosophy of *caveat emptor* and thus to achieve a high standard of business ethics in the securities industry." *Securities and Exchange Commission v. Capital Gains Research Bureau*, 375 U.S. 180, 186, 84 S.Ct. 275, 280, 11 L.Ed.2d 237 (1963).

The Court believes that plaintiff has stated a cause of action under the securities laws and that material questions of fact remain. For the foregoing reasons, defendants' motion for summary judgment is not well taken and is hereby DENIED.

SO ORDERED.